UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : Case No. 24-cr-246-3 (JEB) |
| | : |
| LEVANCIE CARR, | : |
| | : |
| Defendant. | : |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Aid of Sentencing. For the reasons herein and in accordance with the plea agreement, the Government requests that the Court sentence the defendant to 50 months of incarceration on Count One of the information, 60 months on Count Two, and impose a period of five years of supervised release.

### I. SENTENCING PRINCIPLES

In sentencing a defendant, after calculating the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. § 3553.[1] *See Gall v. United States*, 552 U.S. 38 (2007). These factors are in keeping with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the

---

[1] As the Pre-Sentence Report (PSR) correctly states, because the defendant is a career offender, his Guideline range is 262-327 months. The parties had estimated that his Guideline range would be 101-111, after accounting for both counts in the information. However, the parties had incorrectly believed that Mr. Carr's prior drug conviction in Superior Court case 2002-FEL-004132 would not be counted under U.S.S.G. § 4A1.1(a). The PSR correctly scores this conviction as three points because his supervision was revoked, and he was not released until March of 2018. PSR at 12. The Government had previously agreed to limit its allocution to the non-career offender Guideline with regard to another defendant in this case, Davon Cunningham. To avoid unfair sentencing disparities, the Government will similarly limit its allocution in this matter.

wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. *See Spanziano v. Florida*, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); *see also Williams v. New York*, 337 U.S. 241, 251 (1949). Further, under the Guidelines and Section 3553, similarly situated defendants should receive like punishments. *See* 18 U.S.C. § 3553(a)(6).

## II.     FACTUAL BACKGROUND

As set forth in the proffer submitted in support of the plea agreement, in July of 2023, in connection with an investigation into drug trafficking in the Trinidad neighborhood, law enforcement installed pole cameras in the 1100 block of Raum Street, N.E., Washington, D.C. Video from the cameras showed a group of men making hand-to-hand transactions with the individuals who came into the area, and they engaged in these hand-to hand transactions on an almost daily basis. Members of the group routinely discouraged others from the block by approaching vehicles that came into the area and asking the occupants why they were there. Furthermore, members of the group, including defendant Levancie Carr, regularly went to the same buildings before (and sometimes after) conducting hand-to-hand transactions. These locations included 1657 11th Place N.E.

Officers with the Metropolitan Police Department (MPD) introduced confidential informants (CIs) and undercover officers (UCs) into the area to make controlled purchases of narcotics. From June 2023 through March 2024, the CIs and UCs made approximately 42 controlled purchases of narcotics from members of the group. Most of these controlled purchases took place in the 1100 block of Raum Street, N.E., Washington, D.C. These purchases total over 600 grams of fentanyl and approximately 150 grams of cocaine base.

With regard to defendant Carr in particular, over the course of 18 controlled purchases, the CIs purchased approximately 15 grams of cocaine base, 28 grams of fentanyl, and 18 grams of fentanyl analogue. Further, on or about May 27, 2024, in a search warrant conducted at Mr. Carr's apartment, agents recovered approximately 375 grams of cocaine, five firearms, and approximately $115,621 in cash. Mr. Carr pled guilty to a two-count information on September 11, 2025.

### III. SECTION 3553 FACTORS

#### A. Nature and Circumstances of the Offense

The nature of this offense is undoubtedly serious. The defendant repeatedly distributed narcotics including cocaine base, fentanyl, and fentanyl analogue to the CIs. His illegal conduct spanned several months from August 2023 through February 2024, so this was not a one-time indiscretion by the defendant. In addition, as demonstrated by the recovery of approximately 375 grams of cocaine and over $115,000 in cash from his residence, he was in no way a "small time dealer."

Further, as the Court knows, fentanyl is an extremely lethal drug. Two milligrams of fentanyl can be fatal. *See United States v. Glasgow*, 2021 WL 2403136 at *7 (D.D.C.) (Lamberth, J.). According to the DEA, "[f]entanyl is a Schedule II controlled substance that is similar to morphine but about 100 times more potent . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[2] The District of Columbia in

---

2 https://www.dea.gov/resources/facts-about-fentanyl

particular has been greatly impacted by the distribution of fentanyl. For example, in 2022, D.C. had a record 448 opioid overdose deaths – on average, 37 opioid overdose deaths per month.[3] This is up from 427 in 2021, and 411 in 2020, according to the city's medical examiner. Six out of ten fentanyl-laced fake prescription pills analyzed contain a potentially lethal dose of fentanyl.[4] Accordingly, regardless of the Guidelines, the Government views this as a serious offense that warrants a significant sentence.

### B. Deterrence and the Need to Protect the Public

As noted above, the defendant illegally possessed several firearms in connection with the drug conspiracy. The Government views this as a significant escalation in the dangerousness of the offense even though the firearms were located inside the defendant's residence. *See, e. g., United States v. McMillan,* 2025 WL 2607806 (E.D. Tenn.) ("Conspiring to distribute narcotics is inherently dangerous, and the possession of firearms in furtherance of the that effort escalates the potential."); *see also United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession in a public space presents a significant danger to the public). Also, as this will be his third felony drug conviction, should the defendant possess a firearm in the future he would quite likely fall under the Armed Career Criminal Act and be subject to a 15-year mandatory sentence. Accordingly, the Government believes a substantial sentence is necessary for purposes of deterrence.

---

3 https://www.wusa9.com/article/news/local/dc-health-advocates-urge-mayor-to-declare-opioid-crisis-a-public-health-emergency/65-8cad9abd-af25-4013-bcb1-51e8e67dfa84; https://www.washingtonpost.com/dc-md-va/2023/04/04/dc-vending-machine-opioids-narcan/

4 https://www.dea.gov/onepill

C. **History and Characteristics of the Defendant**

The defendant is 43 years old. According to the PSR, he has not yet obtained his GED. Sadly, his background as outlined in the PSR at 21-22 (including "normal" violence and the need to "hustle" to help support his family) is all too common in D.C. On the positive side, he was employed prior to his arrest in this case as a home health aide and a mosquito sprayer. PSR at 25.

This case represents the defendant's fourth conviction as an adult and his third drug conviction. He also has ten prior arrests as an adult. Furthermore, he received a six-year sentence in a Superior Court Case 2003-FEL-003912. PSR at 15. As the Court knows, that is a long sentence for a non-violent offense in Superior Court. Despite that sentence, he continued to distribute narcotics. Accordingly, the Government believes a longer sentence is clearly necessary for purposes of deterrence. *See, e. g., Qualis v. United States*, 373 F. Supp. 2d 873, 877 (E.D. Wisc. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and to deter future misconduct, to note the length of any previous sentences imposed."); *United States v. Guzman-Najera*, 440 Fed. Appx. 391 (5th Cir. 2011) (affirming sentence of 57 months for illegal reentry when defendant had previously served two 30-month sentences for the same offense).

D. **Need to Avoid Sentencing Disparities**

A sentence within the Guidelines will generally avoid unwanted sentencing disparities among defendants who have committed similar crimes. Indeed, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (quoting

5

*United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). The Government is asking for a sentence within the non-career offender range in light of its allocution in Mr. Cunningham's case.

IV. **CONCLUSION**

For the reasons stated herein, the Government requests that the Court impose a total sentence of 110 months. The Government will move to dismiss the remaining counts of the indictment at sentencing pursuant to the plea agreement. The Government will submit a Consent Order of Forfeiture as to the firearms and $25,621 pursuant to the plea agreement. Finally, the Government understands that administrative forfeiture proceedings are ongoing with regard to the remaining $90,000 seized from Mr. Carr's residence. The Government will address the forfeiture at sentencing if the Court desires.

Respectfully submitted,

JEANINE PIRRO
UNITED STATES ATTORNEY

BY:     /s/
NIHAR MOHANTY
Assistant United States Attorney
D.C. Bar Number 436686
United States Attorney's Office
601 D Street, NW
Washington, DC  20530
Telephone: (202) 252-7700
Email: Nihar.Mohanty@usdoj.gov